27 C.C.P.A. (Patents)

## In re CARLTON.

### Patent Appeal No. 4308.

Court of Customs and Patent Appeals.
April 29, 1940.

Rehearing Denied June 21, 1940.

Paul Carpenter, of New York City (J. T. Basseches, of New York City, of counsel), for appellant.

Howard S. Miller, of Washington, D. C., for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming that of the examiner denying the patentability, in view of prior art cited, of claims numbered 8, 9, 11 to 13, inclusive, and 15 to 22, inclusive, in appellant's application for patent entitled "Improvements in Abrasive Article and Method of Making the Same."

Claims 8, 18, 19, 20, 21, and 22 are for the article and the others are for the process. Claims 8 and 9 are deemed to be fairly representative of the respective groups. They read:

"8. The new abrasive article including a binder and a grit, said binder being a heat hardenable phenol aldehyde resinous reaction product, modified by a drying oil and solidified to the desired degree by heating to harden the resinous product and oxidize and polymerize the drying oil in situ.

"9. The process of preparing an abrasive article which includes forming a flexible sheet from abrasive grains and a binder including a heat hardenable reaction product of a phenol and an aldehyde in a resinous condition at an intermediate stage, brought into association with a drying oil, and heating to cause maturing of the resin phase of the binder and oxidation and polymerization of the drying oil in situ, producing a solid, flexible and water-resistant sheet."

The references cited are: Okie, 1,581,-657, Apr. 20, 1926; Carlton, 1,775,631, Sept. 16, 1930.

It may be said that the examiner rejected all the claims now on appeal, except Nos. 15, 16, and 17, "as being fully met by the patent to Okie." He stated that the patent to Carlton was cited "merely to show that phenol-formaldehyde resin is an old

synthetic resin." Claims Nos. 15, 16, and 17 he rejected upon the sole ground of lack of disclosure. The board disagreed with his view relative to lack of disclosure, but held claims Nos. 15, 16, and 17 rejectable, along with all the others, as presenting nothing patentable over Okie.

Appellant's disclosure relates to an abrasive article such as sandpaper, but recites that certain features of it have a wider field of utility.

The patent to Okie recites: "My present invention relates in general to the treatment of material, preferably in sheet form, and more particularly the treatment of material for the purpose of forming or attaining composite structures, of which well known forms of abrasives such as what is commonly known as sand-paper is an example."

So, the general object of appellant is the same as that of the patentee. In comparing the respective disclosures, the board said:

"As indicated by claim 8 [of appellant], the abrasive includes a binder which comprises a heat hardenable phenol aldehyde resinous product modified by drying oil and solidified or treated by heating to harden the resinous product and oxidize and polymerize the drying oil.

" * * * The examiner points out that Okie discloses a process of making sandpaper using an oil-resin bond for holding the sandpaper grit upon the backing and that the resins may be the ordinary varnish resins or synthetic resins. The patent to Okie appears to disclose the same composition of material for the binder as that set out in these claims, that is, the combination or mixture of a resin with a drying oil."

Before us appellant contends that—"Okie lacks anticipatory value in that Appellant's materials are not shown, their proportions are not shown, and, that as to the essential ingredient, in the form of an oil soluble heat hardenable phenol aldehyde resin, such material was not in existence at the time that Okie filed his application."

The foregoing contention was made before the board, being particularly emphasized in appellant's request of that tribunal for reconsideration, with which request there was filed an affidavit of a chemist employed by the assignee of Okie's patent (also stated in appellant's brief to be the assignee of appellant's application) directed especially, as we understand it, to the claim that appellant's "material was not in existence at the time that Okie filed his application."

It is not possible to determine just what weight, if any, the board gave to the affidavit. In its decision upon the request for reconsideration no reference was made to it However, the request for reconsideration itself set forth the substance of all that seems to us to be of importance in the affidavit, and the matter was fully discussed by the board in the following terms:

"Petitioner argues that in applying the patent to Okie the [former] decision has dealt with the generic disclosure thereof and has not given due weight to the specific features in the claims on appeal. It is argued that although the Okie patent makes reference to a synthetic resin it does not make reference to the specific resin included in the appealed claims. Petitioner states that one group of claims, including claim 8, refers to a heat hardenable reaction product of a phenol aldehyde in a resinous condition and it is pointed out that while the Okie patent makes reference to a synthetic resin which may be substituted for resins, such as rosin, that the synthetic resins most closely resembling turpentine rosin are the cumarone resins. It is further argued that the generic disclosure in the patent to resins of the bakelite type does not provide the specific teachings of the invention and that there are synthetic resins of phenol formaldehyde which are not heat hardenable.

"It is to be noted that applicant's disclosure on page 6, for example, refers to the use of a so-called phenol formaldehyde or bakelite varnish modified with a drying oil. The patentee refers to the bakelite type and also discloses that the resin used may be treated with a drying oil, such as linseed oil, for example, and it appears that the drying oil modifies to some extent the resinous product.

"For reasons clearly set out in our decision as to the disclosure of the Okie patent and the character of the claims of the type indicated by claim 15, it is believed that the holding was correct to the effect that these claims are unpatentable over the Okie disclosure. The particular synthetic resins claimed are described generally in both the reference and in the application as of the bakelite type and although petitioner argues that the claims emphasize

a specific type of phenol aldehyde resin not taught by Okie, it is understood that the typical bakelite resins are of the phenol aldehyde type here involved and at least it is considered that these claims are unpatentable over the disclosure of the Okie patent."

We have given careful consideration to the text of the affidavit, particularly to that part which relates to the "curing time" specified by the respective parties for the materials they describe, and to that part which reads: "That from a reading of the specification of the Carlton application above identified and from his knowledge and experience in the art, he understands that portion of this disclosure relating to 'Method No. 2' on page 12 of the specification, to relate to a binder material comprising predominant proportions of a heat hardenable phenol-aldehyde resin which is modified by the addition of minor proportions of a drying oil; that in using such a composition as a binder the essential characteristic of the binder is the heat hardenability characteristic of the predominant resin component; and that the nature of the binder disclosed by Carlton is distinguished from that disclosed in the Okie patent, not only by the relative proportions of resin and drying oil but further by the use of resins having a characteristic, i. e. heat treatment hardenability, which characteristic was not a characteristic of any resin available at the time of the filing of the Okie application in a resin also possessing the characteristic of oil solubility essential to make it adaptable to the Okie procedure."

Notwithstanding the statements of the affidavit to which, of course, we give full credit, we are not convinced of error in the decision of the board.

We are of opinion that, as is said, in substance, in the brief of the attorney for the Commissioner of Patents before us, the board, although not expressing the holding in the exact terms, held, in effect, that the specific resin disclosed by appellant is an equivalent of that disclosed by Okie. Furthermore, such holding seems to us to be justified upon the basis of appellant's disclosure relating to use of "a so-called phenol-formaldehyde or Bakelite varnish when modified with a drying oil * * *" taken in connection with the reference in the patent to the employment of "* * * synthetic resins such as condensation products of which the so-called bakelite is a type."

Needless to say the subject matter here involved is quite technical in its nature. The decisions below bear witness to the fact that it has received careful scrutiny by the experts in the Patent Office, whose decisions upon such matters, as so often has been said, the courts are unwilling lightly to reverse. We do so only when convinced that they are clearly wrong. In this instance we are not so convinced.

An interesting question respecting appellant's right to amend his reasons of appeal after the case had reached this court was raised here, but, in view of our opinion respecting the merits, the particular amendment which was sought is not important to our decision. Its absence from the reasons as originally stated has not affected our decision, and it is unnecessary that the right sought be passed upon.

The decision of the board is affirmed.

Affirmed.